## Seay v. Buechel Produce Exchange, et al.

(Decided May 18, 1223.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Covenants—Construction of Switch Track for Steam Railroad Held Violation of Restriction in Deed.—The construction of a switch track leading to a warehouse on the lots in controversy would violate the restrictions in the deed to plaintiff prohibiting the sale of the property to be used for steam or electric power or for any business of an objectionable nature, since the operation of steam locomotives on the switch would be more objectionable than the operation of stationary steam engines on the premises

W. L. DOOLAN and ALLEN D. DODD for appellant.

FRED FORCHT and BEN F. WASHER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming.

The action in which the judgment from which this appeal is prosecuted was rendered, was one for specific performance of a contract for the purchase and sale of two building lots in the suburbs of Louisville. Appellee Rudolph acquired a considerable boundary of land, including that under consideration, several years before the commencement of this action and subdivided it into lots and sold a large number of them. On part of the tract he built a handsome residence not so far from the tracks of the Southern Railroad entering Louisville. On some of the lots which he sold first were later erected industrial plants and business houses which were objectionable to a residential district which he desired to make of his addition. In an effort to control this matter Rudolph placed building restrictions in all subsequent deeds. The two lots under consideration were conveyed by Rudolph to Sallie D. Seay, in February, 1911. To prevent appellant Seay and her assigns from using the two lots for objectionable purposes he placed in the deed the following restriction:

"It is agreed between the parties that the feed store to be erected on above conveyed property must be next to the Scoggan warehouse, the store room to the east of the feed store and a residence on the remaining ground above described.

"It is also agreed that the property herein conveyed must never be sold to anyone for a manufactory, nor is it to be used for a steam or electric power. It must not be used at any time for a blacksmith shop or any business of any objectionable nature.

"It is also a part of the consideration of this deed that the property herein conveyed shall never be sold, rented, leased, traded, or in any way set over to any person or persons of African descent; and that the property herein conveyed shall never in any way be used for the manufacture or sale of any intoxicating liquor or liquors."

A store house was erected upon the lot farthest away from the Rudolph home, in accordance with the restrictions placed in the deed. On April 15, 1920, appellant Seay entered into a contract with appellee Buechel Produce Exchange, a corporation, whereby she agreed to sell and convey both said lots to the corporation for the price of $10,000.00. The contract provided:

"Said first-party covenants to convey to second party a good and marketable fee simple title to said property and with a covenant of general warranty and against all incumbrances and free from any restrictions or conditions which will prevent the second party in constructing, erecting and maintaining and using after such construction and erection, a railroad spur or switch over and along said property from the said right of·way of the Southern Railroad to warehouse or warehouses now located on said property or to be erected thereon, which said spur or switch shall be used for switching cars, and loading and unloading such products as hereinafter mentioned, to and from said warehouse or warehouses, which said warehouse or warehouses are used and are to be used in the handling and storage of farm products, especially onions, potatoes and cabbage between times of purchase and sale and delivery thereof, and said cars to be moved to and from said warehouse or warehouses by the railroad engine or engines used by said Southern Railroad in the operation of its freight business."

Later and within the time contemplated Mrs. Seay prepared and executed to the exchange corporation a general warranty deed for the two lots, described in the contract, embracing in the deed the following provision:

"As a further consideration herein it is agreed that the property herein conveyed must never be sold to anyone for a manufactory, nor is it to be used for steam or electric power. It must not be used at any time for a blacksmith shop or any business of an objectionable nature. Said property shall never be sold, rented, leased, traded, or in any way set over to any person or persons of African descent, and said property shall never in any way be used for the manufacture or sale of any intoxicating liquor or liquors."

She tendered the deed thus prepared and acknowledged to the grantee exchange company and demanded the purchase price. The grantee, now appellee, declined to accept the deed on the ground that the restrictions therein contained would prevent it from laying, maintaining and operating a railroad switch from a connection with the lines of the Southern Railroad at the rear of the lots across the said lots to a warehouse at the rear of the store, erected on the said lots where the company, as set forth in the contract, desired to carry on a produce business, storing and selling the same in carload lots. This

switch at its nearest point would be only 315 feet from the residence of Rudolph.

Answering the petition of appellant for specific performance, the corporation set out all the facts, including the reservations and restrictions made in the deed to appellant Seay from Rudolph, and further pleaded that the construction, maintenance and operation of the switch would be a violation of the restrictive terms of the deed, and that it would not be able to maintain and operate such switch line for which reason it was not bound to accept the deed. Rudolph was made cross-defendant and answered and set up his objection to the construction, maintenance and operation of the switch and attempted to show wherein the switch would be a violation of the restrictive provision of the deed which he made to Mrs. Seay; that the erection and maintenance of such a switch for the carrying of steam engines and trains would be a flagrant violation of that restrictive provision of the deed reading:

"It is also agreed that the property herein conveyed must never be sold to anyone for a manufactory or to be used for *steam or electric power.* It must not be used at any time for a blacksmith shop or any business of an *objectionable nature.*"

A copy of the contract relied upon and of the deed from Rudolph to Mrs. Seay and a copy of the offered deed of Mrs. Seay and husband to the appellee exchange corportion were made a part of the petition and answers. A general demurrer was filed to the petition by the appellee exchange corporation, and overruled. Then came the exchange corporation and filed answer in two paragraphs. The said answer was made a cross-petition against Rudolph. When Rudolph appeared he filed a general demurrer to the petition of appellant Seay. Before this was acted upon, came Mrs. Seay by counsel and filed an amended petition. The general demurrer of appellant Seay to the cross-petition was overruled as was the demurrer of Rudolph to the petition as amended. Rudolph then filed an answer and counterclaim and cross-petition in which he set forth all the facts with relation to his acquiring the lands on which the subdivision was laid out, the division of the lands into lots and the sale thereof, including the restrictions upon the use to which the lots were to be placed, and prayed that the court enjoin and restrain appellant Seay and appellee Buechel

Produce Exchange Company from constructing and permitting to be constructed on the property described in the petition a railroad switch or spur, or any railroad tracks, and from operating or permitting to be operated on the said property any steam railroad or engine employing steam power.

Appellant Seay filed her general demurrer to the second paragraph of the answer of appellee Rudolph. The general demurrer of the plaintiff to the second paragraph of Rudolph's answer was overruled. The trial court delivered a written opinion, holding that the restriction upon the use of the property contained in the deed of conveyance should be strictly construed, and that no construction should be allowed which would defeat the intention of the grantor fairly deducible from the language employed. 24 Cyc. 1063. That court construed the contract and restrictive clauses of the deed with respect to the establishment of a manufactory and the use of the lots in question for steam or electric power, holding that the operation of steam engines upon the switch so close to the home of Rudolph would be objectionable to him. "He so says in his deed and the operation of a switch engine propelled by steam, if it does not come specifically within the expression 'nor is it to be used for steam or electric power,' clearly is included in the provision of a business of an *objectionable nature,* used by him in connection with the prohibition of a blacksmith shop." When he provided that the property should not be used for steam or electric power the language would seem to mean steam or electric power, whether stationary or moving. Clearly, a moving steam engine would be of more annoyance than one which was stationary, and no doubt would give off more noise and create greater vibration and annoyance, which would be especially objectionable in a residental district. If the switch could be built as proposed, 315 feet from the residence of Rudolph, it could even be built on the nearest edge of the lots in question, which would have been very near the residence of Rudolph. In fact, the lots could be covered with such railroad switches. Manifestly, the construction of railroad tracks as proposed for the purpose of operating steam engines over and across the lot is a violation of the restrictive terms of the deed. The trial court was correct in so holding, and the judgment is affirmed.

Judgment affirmed.